SMILEY v GRAND BLANC BOARD OF EDUCATION

McKEE v WOODHAVEN SCHOOL DISTRICT

Docket Nos. 65326, 65930. Argued October 15, 1981 (Calendar Nos. 17, 18).—Decided December 23, 1982. Rehearing denied as to *Smiley*, 417 Mich 1106.

Robert K. Smiley sought relief under the teacher tenure act, alleging that reassignment by the Grand Blanc Board of Education as a classroom teacher following employment as an administrator was a demotion. The State Tenure Commission found the reassignment proper, and the Macomb Circuit Court, Edward J. Gallagher, J., affirmed the commission's decision. The Court of Appeals, R. B. Burns, P.J., and D. E. Holbrook, Jr., and D. F. Walsh, JJ., denied leave to appeal (Docket No. 45764). The plaintiff appeals.

Alexander McKee sought similar relief after reassignment by the Woodhaven School District. The State Tenure Commission denied relief. The Ingham Circuit Court, Robert Holmes Bell, J., reversed, holding that McKee had been granted tenure as an administrator by virtue of the district's failure affirmatively to exclude administrative tenure during the time McKee was employed without a written contract. The Court of Appeals, Danhof, C.J., and M. J. Kelly and Corsiglia, JJ., affirmed, holding that tenure can be excluded only by an express provision in a contract (Docket No. 48142). The defendant appeals.

In an opinion by Justice Ryan, joined by Chief Justice Fitzgerald and Justices Kavanagh, Levin, and Coleman, the Supreme Court *held:*

The plaintiffs did not acquire tenure as administrators, because tenure was excluded by their original written contracts, which were continued in effect although not renewed in writing as required by law; therefore, the provisions of the teacher tenure act and the School Code which would afford relief are inapplicable.

1. The teacher tenure act provides that a written contract

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5] 68 Am Jur 2d, Schools §§ 149, 152.

[2, 4, 5] 68 Am Jur 2d, Schools § 143.

[3] 53 Am Jur 2d, Master and Servant § 23.

which excludes tenure as an administrator is enforceable and that failure to exclude tenure as an administrator in a written contract results in the acquisition of tenure by the administrator. The School Code provides that administrators are to be employed only under written contracts, and these cases, in which the plaintiffs' employment was not continued under written contracts, ought not to have arisen; however, decision of the cases by the Court does not alter the mandatory nature of the code provisions.

2. The statutory provision for an automatic one-year renewal of the contract if notification of nonrenewal is not given in writing can be read to provide that only a single extension can result from failure to give notice of nonrenewal or that continuous renewals can result from failure to give notice. Where such an ambiguity exists, the Court must provide a reasonable interpretation that is consistent with the purposes of the act and that does not do violence to the intent of the parties who enter a contract. The statutory provision should be interpreted to give continuing effect to an original written contract that is neither renewed nor abrogated over the course of several years. The original contract is the only source to find the intent of the parties, and it is hornbook law that an employee who continues in the service of another after the expiration of a contract of employment does so on the terms of the original contract, except as modified by the agreement of the parties.

3. Both Smiley and McKee were originally employed as administrators under written contracts which specifically excluded administrative tenure. Subsequently, both plaintiffs were tendered, but refused to sign, continuing contracts, and their employment continued without a written contract. Under such circumstances, the School Code must be interpreted to give continuing effect to an original contract which has neither been renewed nor abrogated, and the plaintiffs did not acquire tenure.

*Smiley* affirmed.

*McKee* reversed.

Justice Williams, dissenting, wrote that a simple reading of the School Code and the teacher tenure act indicates that the Legislature placed an affirmative duty upon a school district to provide an administrator with a written contract and that to read the statutes to provide continuous renewals of a contract upon failure to give notification of nonrenewal does not comport with the legislative intent to protect a teacher from the

vagaries attendant upon employment under an oral contract of uncertain terms.

100 Mich App 195; 298 NW2d 881 (1980) reversed.

## OPINION OF THE COURT

1. SCHOOLS — ADMINISTRATORS — CONTRACTS — TENURE.

The teacher tenure act provides that a written contract which excludes tenure as an administrator is enforceable and that failure to exclude tenure as an administrator in a contract results in its acquisition (MCL 38.91; MSA 15.1991).

2. SCHOOLS — ADMINISTRATORS — CONTRACTS — RENEWAL.

The provision of the School Code that an administrator shall be employed under a written contract and that upon failure to notify the administrator of nonrenewal of the contract it shall be renewed for an additional one-year period must be interpreted to give continuing effect to an original written contract that is neither renewed nor abrogated over the course of several years (MCL 380.132[2]; MSA 15.4132[2]).

3. MASTER AND SERVANT — CONTRACT OF EMPLOYMENT — CONTINUATION — TERMS.

An employee who continues in the service of another after the expiration of a contract of employment does so on the terms of the original contract, except as modified by agreement of the parties.

4. SCHOOLS — ADMINISTRATORS — CONTRACTS — RENEWAL — TENURE.

A school administrator who continues after the expiration of a written contract to serve without a new written contract over the course of several years serves on the terms of the original contract except as modified by the parties, and where the original contract excluded tenure as an administrator, such tenure was not acquired by operation of the provision of the teacher tenure act that the contract must exclude tenure to prevent its acquisition on the ground that there was a failure to exclude it in the years after the written contract (MCL 38.91, 380.132[2]; MSA 15.1991, 15.4132[2]).

## DISSENTING OPINION BY WILLIAMS, J.

5. SCHOOLS — ADMINISTRATORS — CONTRACTS — RENEWAL — TENURE.

*A simple reading of the School Code and the teacher tenure act indicates that school districts have an affirmative duty to provide administrators with written contracts; a failure to give notification of nonrenewal should not result in continuous*

*renewals of the original contract, which excluded tenure, over a period of years, because that permits a district to circumvent the legislative intent to protect a teacher from the vagaries attendant upon employment under an oral contract of uncertain terms (MCL 38.91, 380.132[2]; MSA 15.1991, 15.4132[2]).*

*Kiefer, Allen, Cavanagh & Toohey* (by *H. Rollin Allen)* for plaintiff Smiley.

*James R. Buckley, P.C.* (by *James R. Buckley* and *Kathleen Buckley),* for defendant Grand Blanc Board of Education.

*Richard B. Bailey* for plaintiff McKee.

*Clark, Hardy, Lewis, Fine & Pollard, P.C.* (by *Richard M. Tuyn),* for defendant Woodhaven School District.

RYAN, J. Robert K. Smiley and Alexander McKee are teachers who have in the past worked as administrators. Upon reassignment to the classroom, each sought relief under the teacher tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.* These teachers have asserted that their reassignments are demotions[1] and violate the substantive protections afforded by the tenure act. Those substantive protections are inapplicable, though, because these teachers did not acquire tenure as administrators.

I

Before Robert K. Smiley went to work for the Grand Blanc Board of Education, he had worked for other school districts as a teacher and an administrator. In September of 1970, he executed a written contract that provided that he would

[1] "The word 'demote' shall mean to reduce compensation or to transfer to a position carrying a lower salary." MCL 38.74; MSA 15.1974.

serve as supervisor of personnel and instruction for the defendant from August 1, 1970, until June 30, 1971. Tenure was not mentioned in this contract. In January of 1972, a second contract was executed, covering the period from July 1, 1971, until June 30, 1972. We have not been provided with a copy of this contract, but there is no dispute that it contained a clause that recited that administrative tenure was not granted to Smiley. Similar contracts were signed for the 1972-1973 and 1973-1974 school years. Smiley continued to serve as supervisor of personnel and instruction until he was relieved of those duties in October of 1974 and "assigned to special projects" under the supervision of another administrator. To assist Smiley in finding other employment, he was permitted to keep his title of supervisor of personnel and instruction. Indeed, the parties executed in December of 1974 a contract employing Smiley as supervisor of personnel and instruction from July 1, 1974, until June 30, 1975. This contract included a final paragraph excluding tenure as an administrator,

"It is expressly understood by both parties that tenure in the position designated on this contract has not been granted but that no rights of either party have been waived as to the provisions of the Michigan teacher tenure act."

At some point between October of 1974 and March of 1975—the record is far from clear—Smiley accepted a reassignment as an administrative assistant. He was tendered, but declined to sign, a contract calling for him to serve as an administrative assistant during the 1975-1976 school year.[2] This contract would have excluded tenure.

[2] Smiley was negotiating for a higher salary.

In November of 1975, Smiley's former position of supervisor of personnel and instruction was abolished. In December of 1975, the board of education reassigned Smiley to the classroom beginning in February of 1976. No written charges or hearing accompanied this reassignment.

Smiley sought to persuade the State Tenure Commission that he should be reinstated as an administrator, but the commission found proper the reassignment to the classroom. The tenure commission did agree that Smiley had "gained tenure as supervisor of personnel and instruction after completing one year of satisfactory service in the school district", but explained that that position had been eliminated in the course of an altogether proper reorganization of the board's administrative structure. The tenure commission did not come to a conclusion about whether Smiley had tenure as an administrative assistant, explaining instead that he would lose on the merits even if he did have such tenure.

The Macomb Circuit Court affirmed the decision of the tenure commission. An application for delayed appeal was denied by the Court of Appeals "for lack of merit in the grounds presented". We granted leave to appeal. *Smiley v Grand Blanc Bd of Ed,* 411 Mich 900 (1981).

II

Alexander McKee was a tenured teacher from another district when he was hired by the Woodhaven School District in 1972. His first contract, which ran from July 1, 1972, through June 30, 1973, provided that he would serve as an assistant principal. The contract provided that the assistant principal "shall not have tenure as an administra-

tor". This was the only written contract that Mc-Kee ever signed; he declined in 1975 to sign a tendered contract that excluded tenure. McKee remained as an assistant principal until December of 1975, when he was reassigned as a principal at another school in the district. In early 1977, the board of the Woodhaven Public Schools notified McKee that, beginning with the 1977-1978 school year, he would no longer be an administrator, but would instead be reassigned as a classroom teacher. Again, no written charges or hearing accompanied this reassignment.

The State Tenure Commission denied relief to McKee. It concluded that the continuing relationship between McKee and the Woodhaven Public Schools was governed by the original written contract, which included a denial of administrative tenure. The tenure commission also spoke of the rule that contracts should be interpreted to effectuate the intent of the parties. The tenure commission said that the board of education would be placed "in an untenable position" if administrative tenure were granted to McKee as a result of McKee's refusal to sign a contract that excluded administrative tenure.

The Ingham Circuit Court reversed the decision of the tenure commission. The circuit court held that the 1972 contract that excluded tenure was only renewed for a one-year period. Beyond the year during which this contract extension was in effect, the Ingham Circuit Court believed administrative tenure to have been granted as a result of the board of education's failure affirmatively to exclude administrative tenure. The circuit court offered the view that "the law is settled that the mere intention on the part of the school board to

deny tenure is not sufficient to prevent Mr. McKee from acquiring it".

The judgment of the circuit court was affirmed by the Court of Appeals. *McKee v Woodhaven Public Schools*, 100 Mich App 195; 298 NW2d 881 (1980). The Court of Appeals agreed that the board's intention to deny tenure is irrelevant and that tenure can only be excluded through an express contract provision.

We granted leave to appeal. *McKee v Woodhaven Public Schools*, 411 Mich 901 (1981).

## III

A pair of statutory provisions are involved in this case. One is in the School Code and presently reads:[3]

[3] There were several versions of this language during the years when these events transpired:

"The board may employ assistant superintendents, principals, assistant principals, guidance directors, and other administrators who do not assume tenure in position, for terms, not to exceed 3 years, fixed by the board and shall define their duties. The employment shall be under written contract. Notification of nonrenewal of contract shall be given in writing at least 90 days prior to the contract termination date or the contract is renewed for an additional 1-year period." 1976 PA 451; MCL 380.132(2); MSA 15.4132(2).

"The board may employ a superintendent of schools who shall meet the qualifications prescribed in section 573, and shall employ a superintendent if 12 or more teachers are employed. The contract with the superintendent shall be for a term fixed by the board not to exceed 3 years. The board may employ assistant superintendents, principals, assistant principals, guidance directors and other classified administrators who do not assume tenure in position, for a term fixed by the board not to exceed 3 years, and shall define their duties. The employment shall be under written contract. Notification of nonrenewal of contract shall be given in writing at least 90 days prior to the contract termination date or the contract is renewed for an additional 1-year period. * * *" 1970 PA 247; MCL 340.66; MSA 15.3066.

"The board may employ a superintendent of schools who shall meet the qualifications prescribed in section 573, and shall employ a superintendent if 12 or more teachers are employed. The contract with the superintendent shall be for a term fixed by the board not to

"The board may employ assistant superintendents, principals, assistant principals, guidance directors, and other administrators who do not assume tenure in position, for terms, not to exceed 3 years, fixed by the board and shall define their duties. The employment shall be under written contract. Notification of nonrenewal of contract shall be given in writing at least 60 days before the contract termination date or the contract is renewed for an additional 1-year period." 1979 PA 183; MCL 380.132(2); MSA 15.4132(2).

The other important statutory provision is § 1 of art III of the teacher tenure act:

"After the satisfactory completion of the probationary period, a teacher shall be employed continuously by the controlling board under which the probationary period has been completed, and shall not be dismissed or demoted except as specified in this act. *If the controlling board shall provide in a contract of employment of any teacher employed other than as a classroom teacher, including but not limited to, a superintendent, assistant superintendent, principal, department head or director of curriculum, made with such teacher after the completion of the probationary period, that such teacher shall not be deemed to be granted continuing tenure in such capacity by virture of such contract of employment, then such teacher shall not be granted tenure in such capacity,* but shall be deemed to have been granted continuing tenure as an active classroom teacher in such school district. Upon the termination of any such contract of employment, if such controlling board shall not re-employ such teacher under contract in any such capacity, such teacher shall be continuously employed by such controlling board as an active classroom teacher. Failure of any controlling board to re-employ any such teacher in any such capacity upon the

exceed 3 years. The board may employ assistant superintendents, principals, assistant principals, guidance directors, and other classified administrators who do not assume tenure in position, for a term fixed by the board not to exceed 3 years. * * *" 1966 PA 254; MCL 340.66; MSA 15.3066.

termination of any such contract of employment shall
not be deemed to be a demotion within the provisions of
this act. The salary in the position to which such
teacher is assigned shall be the same as if he had been
continuously employed in the newly assigned position.
Failure of any such controlling board to so provide in
any such contract of employment of any teacher in a
capacity other than a classroom teacher shall be
deemed to constitute the employment of such teacher
on continuing contract in such capacity and subject to
the provisions of this act. Continuing tenure shall not
apply to an annual assignment of extra duty for extra
pay." (Emphasis added.) MCL 38.91; MSA 15.1991.

The appellate courts of this state have several
times examined the language of MCL 38.91; MSA
15.1991. In *Street v Ferndale Bd of Ed,* 361 Mich
82; 104 NW2d 748 (1960), a teacher was employed
under a contract that permitted assignments and
transfers at the discretion of the superintendent of
schools. The contract also stated "that the teacher
with whom this contract is made shall not be
deemed to be granted tenure in the capacity of
principal under or by virtue of this contract".
After serving as a principal for several months,
Street was relieved of those duties and reassigned
to teaching duties. He then sought in the tenure
commission and in the courts to be reinstated as a
principal. This Court noted Street's argument that
the spirit of the teacher tenure act is to protect
teachers against the whim and caprice of changing
officeholders. In light of the clear language of MCL
38.91; MSA 15.1991, though, this Court found the
teacher to be without administrative tenure:

"No authority is cited to support the claim that
express, unambiguous statutory language may be disre-
garded by the interpreter in deference to what he
determines to be and invokes as the spirit of the stat-
ute. The language of the statute is explicit that tenure

is not acquired in administrative capacities when expressly excluded, as here, by the contract. That is controlling." *Street,* pp 86-87.

In *Dodge v Saginaw Bd of Ed,* 384 Mich 346; 183 NW2d 793 (1971), a principal received, for three consecutive school years, one-year contracts that expressly provided that no tenure as a principal was to be acquired thereunder. Then, for the next two school years, she received a contract in which the language about nonacquisition of tenure did not appear. These latter two contracts were on a form which throughout the contract used the word "teacher" instead of the word "principal"; further, the printed title of the contract, which had read "Tenure-Teacher Contract of Employment" was edited by striking out "Tenure-Teacher" with a typewriter and typing above these crossed-out words the phrase "Elem. Prins." *[sic]*. We found that this typewritten correction on the title of the contract did not constitute an explicit exclusion of tenure within the language of MCL 38.91; MSA 15.1991:

"The only question we are called upon to determine is whether the employment contract provided that the plaintiff would not have tenure as principal.

"The defendants argue that the striking of the word 'tenure' from the printed form is the equivalent of the statutorily required provision that the teacher would not have tenure. We do not agree.

"Were it not for the requirement of the statute that the contract make provision for *no* tenure, in order to avoid it, the absence of provision *for* tenure might be so construed, but the statute's requirement was intended to obviate the need for construction. .

"We are satisfied that the members of the board did not *intend* to grant the plaintiff tenure in the capacity of principal in the instant contract. We are satisfied from the record that they did not avail themselves of

the only means available under the statute to avoid it."
(Emphasis in original.) *Dodge,* pp 347-348.

In *Goodwin v Kalamazoo Bd of Ed,* 82 Mich App
559, 568-569; 267 NW2d 142 (1978), the Court of
Appeals discussed the underlying philosophy of
MCL 38.91; MSA 15.1991:

"In view of the wide range in size of school districts,
the statute enables local school boards to tailor their
administrative tenure policies accordingly. The statute
does not attempt to dictate uniform tenure policies for
administrators in all school districts. One school board
may not wish to allow school principals to gain tenure
while another board may wish to allow the supervisor
of the stockroom to gain tenure. These are decisions to
be made by each school board and are to be given effect
through contract provisions between the board and
administrators."

The Court of Appeals went on to explain that a
district that seeks to deny tenure need only place
such a clause in the administrator's contract:

"If the contract of a tenured teacher acting as an
administrator does not specify the individual is to be
denied tenure, the statute stipulates that the individual
is to be granted tenure in the administrative position. If
the board does not want to grant tenure, it simply
inserts a contractual provision denying tenure."

Finally, in *Bode v Roseville School Dist,* 405
Mich 517; 275 NW2d 472 (1979), Bode had worked
for the Roseville School District as a superinten-
dent, but never as a classroom teacher. His con-
tract provided that "[t]he Superintendent of
Schools shall not be deemed to be granted continu-
ing tenure by virtue of this agreement". Though
this Court divided on the principal question in

*Bode,* all accepted that this exclusion clause prevented Bode from acquiring tenure as an administrator.

## IV

It is clear from a review of MCL 38.91; MSA 15.1991 and these cases that a written contract that excludes administrative tenure is enforceable and that a written contract that fails to exclude administrative tenure results in the acquisition of tenure by the administrator. Before us today is the question whether administrative tenure is acquired when an administrator begins serving under a written contract with an exclusion clause and thereafter continues to serve in the absence of any written contract.

This is a question which ought not to arise, since the School Code provides in the clearest language that administrators are to be employed under written contracts. MCL 380.132(2); MSA 15.4132(2).[4] The fact that we today determine the rights of parties who have not complied with that statutory provision does not alter its mandatory nature.

In its *McKee* opinion, the Court of Appeals discussed the question whether the final sentence of MCL 380.132(2); MSA 15.4132(2)[5] provides for continuous one-year renewals. The Court of Appeals held that it did not and that the statutory provision permitted only one such renewal. The

---

[4] *Cf.* MCL 380.247(3), 380.346(4), 380.471(1); MSA 15.4247(3), 15.4346(4), 15.4471(1).

[5] At the time McKee was reassigned, this sentence read:

"Notification of nonrenewal of contract shall be given in writing at least 90 days prior to the contract termination date or the contract is renewed for an additional 1-year period."

Court of Appeals reasoned that MCL 380.132(2); MSA 15.4132(2) places upon a school district an affirmative duty to provide a written contract and that "[t]o allow a board to circumvent this clear language by construing the next sentence of the statute to allow continuing implied contracts is to render the requirement of a written contract meaningless". The Court of Appeals further explained:

"The provision which follows in the statute providing for automatic renewal for a one-year period is a protection for employees from arbitrary action by the board. At the expiration date of a written contract it provides to the employee a right to a contract renewal for an additional one-year period if written notification of nonrenewal is not given as provided by statute. The statutory provision relating to renewal of the written contract 'for an additional 1-year period' is phrased in the singular rather than plural. If the contract is renewed between the parties, whether by the automatic renewal provision of the statute or through an express new written contract, the employee has such status as an administrator as is provided by the governing written contract.

"In the instant case it should be noted that the construction of the statute to apply successive one-year renewals of the original contract is inconsistent with the facts as found by the Tenure Commission. The terms of McKee's employment, including his position in the administrative structure, responsibilities and compensation, had been altered drastically over the years. Under such circumstances it is illogical to assert that the original contract remained in effect." *McKee,* 100 Mich App 201-202.

We believe that the final sentence of MCL 380.132(2); MSA 15.4132(2) is susceptible of either interpretation. It can fairly be read to provide that only a single extension can result from a failure to

give notification of nonrenewal. It can fairly be read to provide that continuous renewals can result from a failure to give notification of nonrenewal.

Where such ambiguity exists, we must provide a reasonable interpretation that is consistent with the purposes of the act and that does not routinely do violence to the intent of parties who enter into contracts under the statutory provision. In this way, we can fulfill our obligation to interpret the statute in accordance with the will of the Legislature.[6]

These principles lead us to the conclusion that the final sentence of MCL 380.132(2); MSA 15.4132(2) should be interpreted to give continuing effect to an original written contract that is neither renewed nor abrogated over the course of several years. Where a school district once fails to sign an administrator to a new written contract, the extension clause of MCL 380.132(2); MSA 15.4132(2) serves to protect the administrator from the vagaries that attend employment under an oral contract of uncertain terms. There is no reason that a district that repeatedly fails to sign the administrator to a new written contract should be

[6] *People v Gilbert,* 414 Mich 191, 205; 324 NW2d 834 (1982), *Wikman v City of Novi,* 413 Mich 617, 631-632; 322 NW2d 103 (1982), *White v City of Ann Arbor,* 406 Mich 554, 562; 281 NW2d 283 (1979). In *White* we explained:

"The primary and fundamental rule of constitutional or statutory construction is that the Court's duty is to ascertain the purpose and intent as expressed in the constitutional or legislative provision in question. Also, while intent must be inferred from the language used, it is not the meaning of the particular words only in the abstract or their strictly grammatical construction alone that governs. The words are to be applied to the subject matter and to the general scope of the provision, and they are to be considered in light of the general purpose sought to be accomplished or the evil sought to be remedied by the constitution or statute. See *General Motors Corp v Erves (On Rehearing),* 399 Mich 241, 255; 249 NW2d 41 (1976) (opinion by Coleman, J.)."

rewarded with different treatment under the statute.

The Ingham Circuit Court concluded in *McKee* that the statute "should be construed so as to grant rather than withhold teacher tenure". By limiting to one year the extension clause, the circuit court accomplished that goal in the case at bar, but we think its interpretation would in the long run afford less, not more, protection for teachers.

McKee and the Woodhaven School District came to an agreement that McKee would work for the district under certain terms and conditions. McKee and the district continued that relationship for a number of years. During that time, the parties agreed to a number of modifications in their relationship, some of which were significant. As to those aspects of their relationship which they never reached an agreement to modify, we think it altogether reasonable to assume that both intended the relationship to be governed by the original contract. There is no other source that can identify the intent of the parties and it is hornbook law that an employee who continues in the service of another after the expiration of a contract of employment does so on the terms of the original contract, except as modified by agreement of the parties.[7] We believe that the tenure commission offered a sound analysis of *McKee:*

"We do not believe that the act intended to gratuitously provide the teacher with administrative tenure in this situation. The teachers' authority to perform and be compensated in an administrative position

---

[7] *Cf. Foster v Springfield Clinic,* 88 Ill App 3d 459, 463; 410 NE2d 604, 607 (1980), *Vogel v Washington Metropolitan Area Transit Authority,* 174 US App DC 345, 347; 533 F2d 13, 15-16 (1976), 56 CJS, Master and Servant, § 10, pp 82-83.

comes from the board of education. The board indicated the terms upon which it offered such position, which included a denial of tenure. By embarking in the performance of such administrative position, the appellant cannot be said to have unilaterally changed the terms of that offer to work. The contract, then, continued to deny administrative tenure. MCL 380.132; MSA 15.4132 (formerly MCL 340.66; MSA 15.3066) specifically provides that the written contract of an administrator shall be extended by operation of law for one year if 90 days notice of nonrenewal is not given, or unless the parties enter into a new contract. Since a new written contract was not executed, nor notice of nonrenewal provided, the existing contract (including the denial of tenure) must be considered to have been extended. The terms of that extended contract could not be changed, except as to changes for which there was mutual agreement. Mutual agreement as to terms of salary and promotion are evidenced by the fact that the appellant willingly accepted the new compensation and position. No evidence demonstrating a mutual agreement to remove the tenure denial provisions has been shown. The contract between the parties, therefore, continued to contain an administrative tenure exclusion.

"This is especially true in light of the basic rules of contract interpretation. The general rule in interpreting contracts is to effectuate the intent of the parties. See *Burland, Reiss, Murphy & Mosher, Inc v Schmidt,* 78 Mich App 670; 261 NW2d 540 (1977), *Henry v J B Publishing Co,* 54 Mich App 409; 221 NW2d 174 (1974). What did the parties intend here? The appellee had a policy of not affording tenure to administrators. The appellant's initial contract of employment excluded tenure successfully. A second contract offered to the appellant in 1975, but not executed, excluded tenure. The appellant, with knowledge of the appellee's position on the question of tenure, continued to work in the administrative posts assigned, though claiming tenure as an administrator. Is this claim supported by the facts? We must answer no.

* * *

.

"In the instant matter, salary and other terms of employment were agreed to and accepted by the appellant. The appellee, the promisor, held out the position to the appellant, the promisee, with the condition that tenure was excluded. The appellant knew of this condition, and still accepted the offer, as evidenced by his performance. His claim, that tenure was not expressly excluded by written contract, and, therefore, he has achieved tenure in the administrative position he held, must fail.

"To rule any other way would place the board of education in an untenable position, which we do not think the Legislature intended. As previously indicated, it is the board of education which is specifically identified as the sole body to either deny or permit administrative tenure to occur. To provide the administrator with the power and leverage to force tenure by refusing to sign a proffered contract effectively wrests from the board of education its exclusive statutory authority to determine whether administrative tenure will occur.

"Admittedly, the board of education could have placed the appellant in the classroom upon his refusal to sign the contract. But the board does not have such an opportunity if a large number of administrators were to likewise refuse to sign contracts. To require the board to take such drastic action as placing a large number of administrators in the classroom would require the layoff of an equally large number of teachers, which could be disastrous to the educational system. Or, if the administrators have no seniority under a teacher collective-bargaining agreement, a large number of administrators would be displaced. Nothing in the act indicates that ordinary contract principles cannot be applied to this case, extending by implication the previous written contract provisions, except for change mutually agreed upon. Such was precisely what transpired herein, and thus the denial of administrative tenure shall be considered to have been continued."

Smiley's former position of supervisor of person-

nel and instruction has been abolished.[8] The sole issue framed in Smiley's brief to this Court is whether he attained tenure as an administrative assistant. The only written contract that was ever in effect while he was so employed contained a clause excluding tenure. As with McKee, Smiley's relationship to his employer continued to be governed by his last written contract except insofar as the parties mutually agreed to alter its terms. Smiley and his employer never agreed that he would have tenure as an administrative assistant, and we can locate in neither his contract nor the statutes any reason that the failure of the parties to execute a 1975-1976 contract should result in Smiley's receiving tenure.

## V

For these reasons, we affirm in *Smiley* the judgment of the Macomb Circuit Court and reverse in *McKee* the judgments of the Ingham Circuit Court and the Court of Appeals. The decision of the tenure commission in *McKee* is affirmed. No costs, a public question being involved.

FITZGERALD, C.J., and KAVANAGH, LEVIN, and COLEMAN, JJ., concurred with RYAN, J.

WILLIAMS, J. *(dissenting).* This case is one of first impression. We are asked to determine whether a school administrator acquires tenure when that person begins serving under a written contract with a tenure exclusion clause and in later school years continues to serve without any written contract. The majority opinion holds that school administrators in such a setting do not acquire ten-

---

[8] Like the tenure commission and the Macomb Circuit Court, we have located in the record before us no reason to believe that the elimination of this position was improper or done in bad faith.

ure. While we agree with the discussion found in parts I to III of the opinion, we disagree with the majority's conclusion in part IV that the Legislature intended MCL 380.132(2); MSA 15.4132(2) to be interpreted "to give continuing effect to an original written contract that is neither renewed nor abrogated over the course of several years".

To resolve this question, this Court, in effect, must reconcile and give consistent interpretation to a pair of statutory provisions which regulate the issue in the instant cases. MCL 380.132(2); MSA 15.4132(2) provides that:

"The board may employ assistant superintendents, principals, assistant principals, guidance directors, and other administrators who do not assume tenure in position, for terms, not to exceed 3 years, fixed by the board and shall define their duties. *The employment shall be under written contract.* Notification of nonrenewal of contract shall be given in writing at least 60 days before the contract termination date or the contract is renewed for an additional 1-year period." (Emphasis added.)

In addition, MCL 38.91; MSA 15.1991, a provision in the teacher tenure act, states in part that:

"After the satisfactory completion of the probationary period, a teacher shall be employed continuously by the controlling board under which the probationary period has been completed, and shall not be dismissed or demoted except as specified in this act. *If the controlling board shall provide in a contract of employment of any teacher employed other than as a classroom teacher, including but not limited to, a superintendent, assistant superintendent, principal, department head or director of curriculum, made with such teacher after the completion of the probationary period, that such teacher shall not be deemed to be granted continuing tenure in such capacity by virtue of such contract of*

*employment, then such teacher shall not be granted
tenure in such capacity, but shall be deemed to have
been granted continuing tenure as an active classroom
teacher in such school district."* (Emphasis added.)

From these two provisions, it is easy to list the
requirements that a school board must meet in
setting the terms of an employment contract with
a school administrator. First, MCL 380.132(2);
MSA 15.4132(2) places a burden on the school
district, which employs the type of administrators
listed in this provision, to provide for employment
terms under a *written* contract. Second, the
teacher tenure act in MCL 38.91; MSA 15.1991
requires a school district that wishes to deny
administrative tenure to expressly deny that ten-
ure in a *written contract* made with "any teacher
employed other than a classroom teacher". Third,
to protect school administrators from "arbitrary
and capricious" action by the school district, the
district must notify an administrator of nonre-
newal of a presumably written contract in writing
"at least 60 days before the contract termination
date or the contract is renewed for an additional 1-
year period". MCL 380.132(2); MSA 15.4132(2). See,
also, MCL 380.132(3); MSA 15.4132(3).

In effect, a simple reading of these two statutes
leads us to believe that the Legislature has placed
an affirmative duty upon a school district to pro-
vide a written contract to an administrator, since
the intent of the Legislature is to allow school
districts great flexibility in making decisions about
which administrators are to be given tenured sta-
tus. In short, if the school districts in the instant
cases had provided the mandatory written con-
tracts, the requirements of these two provisions
would have been fulfilled and, hence, there would
be no dispute. See *Bode v Roseville School Dist,*

405 Mich 517, 527-528; 275 NW2d 472 (1979);
*Dodge v Saginaw Bd of Ed,* 384 Mich 346, 347-348;
183 NW2d 197 (1971); *Street v Ferndale Bd of Ed,*
361 Mich 82, 86-87; 104 NW2d 748 (1960); *Goodwin
v Kalamazoo Bd of Ed,* 82 Mich App 559, 568; 267
NW2d 142 (1978).

The key question in this issue is the proper
interpretation to be given the following language
found in MCL 380.132(2); MSA 15.4132(2):

"Notification of nonrenewal of contract shall be given
in writing at least 60 days before the contract termina-
tion date or the contract is renewed for an additional 1-
year period."

The majority opinion states that this language is
"susceptible of either interpretation". Notwith-
standing the fact that the Legislature explicitly
requires a written contract in the same provision,
the majority chooses to legislate by reading the act
affirmatively in that this language "can fairly be
read to provide that continuous renewals can re-
sult from a failure to give notification of nonre-
newal".

It is uncontested that this language was enacted
to protect school administrators from "arbitrary
and capricious conduct" by school districts. See
MCL 380.132(3); MSA 15.4132(3). Thus, we cannot
agree that, where a school district once fails in its
mandatory duty to sign an administrator to a
written contract, this extension clause serves "to
protect the teacher from the vagaries that attend
employment under an oral contract of uncertain
terms". Such an interpretation of this language is
not fair to the administrator whom the Legislature
decided to protect in enacting these provisions.

We agree with the majority opinion that the
teacher tenure act is a remedial statute adopted

"to protect indirectly the public interest by protecting directly the rights of teachers". However, the majority's interpretation of this extension clause accomplishes what the Legislature attempted to prevent in enacting these two provisions. In short, the extension clause, as interpreted by the majority opinion, does not "protect the teacher from the vagaries that attend employment under an oral contract of uncertain terms". Thus, we agree with the Court of Appeals analysis in *McKee v Woodhaven Public Schools,* 100 Mich App 195, 201-202; 298 NW2d 881 (1980), where the Court stated that:

"An affirmative duty is placed by the statutes upon the school district to provide a written contract.

"Such a burden conforms with the language of MCL 380.132(2); MSA 15.4132(2). The provision clearly requires a written contract between school districts and administrators. To allow a board to circumvent this clear language by construing the next sentence of the statute to allow continuing implied contracts is to render the requirement of a written contract meaningless. Every applicable version of the statute states, unambiguously, '[t]he employment shall be under written contract'. MCL 380.132(2); MSA 15.4132(2), superseding MCL 340.66; MSA 15.3066.

"The provision which follows in the statute providing for automatic renewal for a one-year period is a protection for employees from arbitrary action by the board. At the expiration date of a written contract it provides to the employee a right to a contract renewal for an additional one-year period if written notification of nonrenewal is not given as provided by statute. The statutory provision relating to renewal of the written contract 'for an additional 1-year period' is phrased in the singular rather than plural. If the contract is renewed between the parties, whether by the automatic renewal provision of the statute or through an express new written contract, the employee has such status as

an administrator as is provided for by the governing written contract.

"In the instant case it should be noted that construction of the statute to apply successive one-year renewals of the original contract is inconsistent with the facts as found by the Tenure Commission. The terms of McKee's employment, including his position in the administrative structure, responsibilities and compensation, had been altered drastically over the years. Under such circumstances it is illogical to assert that the original contract remained in effect."

For the reasons stated, we would reverse the judgment of the Macomb Circuit Court in *Smiley* and would affirm the judgment of the Ingham Circuit Court and the Court of Appeals in *McKee*. No costs, a public question being involved.

RILEY, J., took no part in the decision of this case.