### THORIN v BLOOMFIELD HILLS SCHOOL DISTRICT

Docket No. 102187. Submitted February 21, 1989, at Detroit. Decided August 7, 1989.

Fred D. Thorin was hired by the Bloomfield Hills School District Board of Education in 1970 to be superintendent of the school system. The employment contract signed by the parties included a provision expressly and unequivocally precluding Thorin from obtaining tenure rights. Similar exclusions were incorporated in a series of written contracts executed by or on behalf of the parties throughout the duration of Thorin's employment. On December 4, 1984, the school board voted to give notice of its intent not to renew Thorin's contract of employment beyond June 30, 1985. Thorin's employment was deemed by the board to be terminated on June 30, 1985. Thorin filed a petition with the State Tenure Commission claiming that the nonrenewal of his employment contract was in derogation of his tenure rights, contending that the contractual exclusion of tenure is inoperative because the board of education never formally authorized the written contracts. The commission determined that the contracts were valid and therefore effectively avoided the accrual of tenure rights, notwithstanding the failure of the board to formally authorize the specific terms of the contracts by majority vote in a public meeting. Thorin appealed to the Ingham Circuit Court, which accepted Thorin's argument that formal authorization of the employment contract was required but concluded that petitioner was not entitled, as a remedial matter, to acquisition of tenure by operation of law since he had accepted the benefits of the contracts for fifteen years without complaint, Robert Holmes Bell, J. Thorin appealed.

The Court of Appeals *held:*

The failure of the board to adhere to the need for formal advance authorization of Thorin's terms and conditions of employment was, at most, a technical defect of de minimis

REFERENCES

Am Jur 2d, Master and Servant §§ 14 *et seq.*; Schools §§ 41, 42, 45.
See the Index to Annotations under Contracts; School Board; Schools and Education; Tenure.

consequence, imposing no prejudice to either party's expectations realized in the fulfillment of the contractual terms. This technical defect does not require that the contract be voided.

Affirmed.

1. SCHOOLS — EMPLOYMENT CONTRACTS — RATIFICATION BY BOARD OF EDUCATION — TENURE.

The failure of a school board to formally ratify written employment contracts executed by the president and secretary of the board and the school superintendent authorizing the employment of the superintendent and expressly precluding the superintendent from obtaining tenure rights does not entitle the superintendent to acquisition of tenure by operation of law where his employment is terminated after fifteen years of service during which he accepted without complaint the benefits of the contracts; the failure of the board to adhere to the need for formal advance authorization of the superintendent's terms and conditions of employment was, at most, a technical defect of de minimis consequence, imposing no prejudice to either party's expectations realized in the fulfillment of the contractual terms.

2. SCHOOLS — EMPLOYMENT CONTRACTS — TENURE — VALIDITY OF CONTRACTS.

Questions of tenure status raising the validity of an employment contract are properly resolved in accordance with ordinary principles of contract law.

*Googasian, Hopkins, Rogers, Carlson & Hohauser* (by *George A. Googasian),* for petitioner.

*Shifman, Goodman & Carlson, P.C.* (by *Burton R. Shifman* and *John A. Carlson),* for respondent.

Before: GRIBBS, P.J., and HOLBROOK, JR. and REILLY, JJ.

HOLBROOK, JR., J. The Ingham Circuit Court entered an opinion and order affirming the State Tenure Commission's denial of a petition for a determination of entitlement to continuing tenure as a school superintendent. We affirm.

This case was presented to the commission on stipulated facts. The petitioner was employed by

respondent school district as its superintendent beginning in the summer of 1970. This employment is formally reflected in the minutes of the district's board of education meeting of June 16, 1970, when a resolution was passed making petitioner's employment effective August 1, 1970. On July 1, 1970, a written employment contract was executed which purported to bind petitioner and the school district. The president and secretary of the board of education signed on behalf of the board of education. This contract included a provision expressly and unequivocally precluding petitioner from obtaining tenure rights. Similar exclusions were incorporated in a series of written contracts executed by or on behalf of the parties throughout the duration of petitioner's employment. However, the minutes of the board meeting reflect no authorization of the contracts or the terms and conditions of employment or any other formal action pertaining to petitioner's employment until December 4, 1984.

On that day, the board voted to give notice of its intent not to renew petitioner's contract of employment beyond June 30, 1985. On February 19, 1985, the board formally ratified the most recent written contract of employment dated July 1, 1980, including the usual exclusion of tenure, and, in the same resolution, rejected "any and all purported contractual arrangements between this School District and [petitioner] not validly adopted." Petitioner's employment was deemed by the board to be terminated on June 30, 1985.

Petitioner sought to avail himself of various avenues of legal redress for his loss of employment. He filed suit for breach of contract in the Oakland Circuit Court, and an appeal from that case is pending before this panel. He also filed a petition before the commission claiming that the

nonrenewal of his employment contract was in derogation of his tenure rights. This is the subject matter of this appeal.

Petitioner's primary contention in this appeal is that the contractual exclusion of tenure is inoperative because the board of education never formally authorized the written contracts. In its denial of the petition, the commission decided that the contracts were valid and therefore effectively avoided the accrual of tenure rights, notwithstanding the failure of the board to formally authorize the specific terms of the contracts by majority vote in a public meeting.

On appeal of the commission's ruling, the circuit court accepted petitioner's argument that formal authorization of the employment contract was required but concluded that petitioner was not entitled, as a remedial matter, to acquisition of tenure by operation of law:

> Here, the denial of tenure was a matter of express mutual agreement. For a period of 15 years, both the School District and petitioner assumed the employment contracts were valid. Both parties faithfully discharged the obligations and accepted the benefits agreed to thereunder. In view of petitioner's express waiver of any claim to tenure, it is clear the instant procedural irregularity did not prejudice petitioner's substantive rights. To permit petitioner to now raise a technical procedural defect in order to defeat his own continuing 15-year agreement would be to senselessly exalt form over substance. . . . Since the denial of tenure was an *intra vires* act and since petitioner accepted the benefits of the contract for 15 years without complaint, he is now estopped to challenge its validity based on the Board's failure to formally approve it.
>
> The Commission's conclusion that petitioner did not acquire tenure, although based on different reasoning, is not contrary to law.

Petitioner's tenure status is controlled by MCL 38.91; MSA 15.1991, which states in pertinent part:

> After the satisfactory completion of the probationary period, a teacher shall be employed continuously by the controlling board under which the probationary period has been completed, and shall not be dismissed or demoted except as specified in this act. If the controlling board shall provide in a contract of employment of any teacher employed other than as a classroom teacher, including but not limited to, a superintendent, assistant superintendent, principal, department head or director of curriculum, made with such teacher after the completion of the probationary period, that such teacher shall not be deemed to be granted continuing tenure in such capacity by virtue of such contract of employment, then such teacher shall not be granted tenure in such capacity, but shall be deemed to have been granted continuing tenure as an active classroom teacher in such school district. Upon the termination of any such contract of employment, if such controlling board shall not re-employ such teacher under contract in any such capacity, such teacher shall be continuously employed by such controlling board as an active classroom teacher. Failure of any controlling board to re-employ any such teacher in any such capacity upon the termination of any such contract of employment shall not be deemed to be a demotion within the provisions of this act. . . . Failure of any such controlling board to so provide in any such contract of employment of any teacher in a capacity other than a classroom teacher shall be deemed to constitute the employment of such teacher on continuing contract in such capacity and subject to the provisions of this act.

Assuming, as petitioner contends, that the contractual exclusion of tenure was legally inoperative, then petitioner would have been entitled to tenure

status as school superintendent, at latest, one year after commencement of employment. MCL 38.92; MSA 15.1992. In addition to reiterating this contention, petitioner also raises claimed deficiencies in the appellate procedure practiced by the circuit court.

The circuit court did not exercise equitable jurisdiction by its use of the term estoppel, which was made in reference to petitioner's acceptance of the benefits and assumption of the obligations of his position in the course of his fifteen-year employment. Although historically the concepts underlying the doctrine of equitable estoppel were derived from the equity side of premodern courts having separate law and equity dockets, this is largely an anachronism. It has long been held that estoppel is applicable in legal proceedings as well. *Stone Road Dairy Co v Humes,* 220 Mich 57, 62; 189 NW 883 (1922); *In re Prichard Estate,* 169 Mich App 140, 157; 425 NW2d 744 (1988), lv den 431 Mich 906 (1988). Unlike in *Benton Harbor Area Schools Bd of Ed v Wolff,* 139 Mich App 148; 361 NW2d 750 (1984), lv den 422 Mich 976 (1985), upon which petitioner principally relies, relief beyond the statutory authority of the Tenure Commission was not imposed; rather, questions of the legality of contractual relations and the validity of the exclusion of tenure were squarely raised and decided.

To the extent that the circuit court can be said to have substituted or modified the legal rationale underlying its affirmance of the commission's decision, we discern nothing in derogation of the principles of appellate review applicable to adjudications by an administrative agency. The familiar rule that appellate courts affirm the right result reached for the wrong reason is appropriate in the administrative context. *Securities & Exchange Comm v Chenery Corp,* 318 US 80, 88; 63 S Ct 454;

87 L Ed 626 (1943). See *Beebee v Haslett Public Schools,* 66 Mich App 718, 721; 239 NW2d 724 (1976), rev'd on other grounds 406 Mich 224; 278 NW2d 37 (1979). Decided on stipulated facts, the issues in this case are entirely legal, and the reviewing court is left only to decide whether the agency's decision is supported by the stipulated facts. See *Gravely v Pfizer, Inc,* 170 Mich App 262, 266; 427 NW2d 613 (1988), lv den 432 Mich 873 (1989). Nothing decided by the circuit court invaded the Tenure Commission's authority to apply its unique expertise in tenure-related matters. See *Halm v Dansville Agricultural Schools Bd of Ed,* 174 Mich App 520, 522; 436 NW2d 680 (1988).

Moreover, a careful reading of the commission's decision suggests two alternative bases supporting the result reached: (1) the initial contract was validly executed and fully binding, or (2) even if the initial contract was procedurally flawed by the absence of formal authorization by the board of education, the flaw was not a "fatal flaw," because respondent's "actions comported with the purpose and the stated requirements of Article III, § 1 of the teachers tenure act [MCL 38.91; MSA 15.1991]." We interpret the latter ground as excusing a technical error because the contract achieved substantial compliance with tenure exclusion requirements. That ground is little, if any, different from the rationale adopted by the circuit court.

Thus, the commission and circuit court both decided on the merits that the failure of the board to adhere to the need for formal advance authorization of petitioner's terms and conditions of employment was, at most, a technical defect of de minimus consequence, imposing no prejudice to either party's expectations realized in the fulfillment of the contractual terms. We agree. As authority, the circuit court cited *McLaughlin v Ford-*

*son Bd of Ed,* 255 Mich 667, 671-672; 239 NW 374 (1931), where it was held:

> There is another principle supporting the contract. A board of education may ratify a contract or be estopped to deny it, even without formal official action of the board. . . . The objections now made to the contract are technical rather than substantial, going to the formality of execution rather than to the authority to employ. . . . Technical objections are more easily waived by conduct than want of power. By permitting plaintiff to rely upon the contract as valid, to give up other employment, to enter upon the duties of the office and perform services under the contract, defendant waived objections to its execution. [Citations omitted.]

Questions of tenure status raising the validity of an employment contract are properly resolved in accordance with ordinary principles of contract law. See *Smiley v Grand Blanc Bd of Ed,* 416 Mich 316, 333; 330 NW2d 416 (1982). Unlike in *Dodge v Saginaw City School Dist Bd of Ed,* 384 Mich 346; 183 NW2d 793 (1971), the contractual exclusion of tenure in this case is clearly and unambiguously expressed; what is at issue is whether a technical defect requires that the contract be voided. We conclude that it does not.

Affirmed.